STEPHEN A. EMERY and another *vs.* THOMAS RICHARDSON.

*Contract, construction and effect of—how discharged.*

If a surety give the creditor his individual notes under an agreement between them, not known to the principal that these notes when paid shall be in full satisfaction and discharge of the original contract, and part only of the notes are paid; this does not discharge the principal, who may be sued upon the original contract and held for so much as remains due thereon after deducting the amounts paid by the surety.

ON REPORT.

ASSUMPSIT, to which the general issue was pleaded, on a contract of which the following is a copy:

" Whereas, Stephen A. Emery and Frederic H. Prince have this day conveyed to Thomas Richardson two third parts, being all their remaining interest in a certain invention, entitled 'A Safety Switch for preventing Railroad Cars and Engines from running off their tracks,' and in and to the letters patent issued therefor, dated (No. 53,593) the third day of April, A. D. 1866. Now in consideration thereof, and of one dollar, the receipt whereof is acknowledged, we, Thomas Richardson as principal, and James E. Fernald, of Portland, as surety, jointly and severally promise and agree with said Emery and Prince, to pay them the sum of seven thousand dollars on or before the eighth day of January next, or to re-convey and re-vest in them all the title and interest in said two thirds, as fully and perfectly as the same now are or were before said conveyance was made.

" Witness our hands at Portland, this second day of October, A. D. 1866.

" Witness:  THOMAS RICHARDSON,
GEORGE F. EMERY.  JAMES E. FERNALD."

Rev. Stamp, cancelled Oct. 2, 1866.

The eight day of January, 1867, having passed without payment of the $7,000, the plaintiffs wrote defendant requesting immediate payment, to which he replied on the 31st of that month, saying he expected to be in Portland between the 9th and 15th of February " prepared to settle all matters of business between Messrs. Emery & Prince and myself; " adding, " Please don't understand that I repudiate the payment of the money with interest." . . . " The delay in the payment to Messrs. Emery & Prince can not be more annoying to them than to myself. Had I anticipated the inconvenience to those gentlemen or the annoyance it has been to Mr. Fernald and myself, I should have returned the switch to them on the 8th day of January, and I am now willing to return them the entire interest in the switch, if they will reimburse me for my time and expenses. I presume they want their money, and that they shall have, and with many regrets that I have placed myself in the position which I occupy, and with the assurance that they shall receive the money at the earliest possible moment that I can give it to them, I am," etc., etc.

The defendant failing to pay, plaintiffs made demand of the surety, Fernald, who, after repeated calls for the money, paid $1,000, April 13, 1867, and promised to pay the balance, but did nothing more till August 13, 1867, when he gave his personal notes for the balance and interest and received from them a receipt of this tenor :

PORTLAND, Aug. 13, 1867.

Received of J. E. Fernald eleven notes of five hundred dollars each, and one of seven hundred thirty-three dollars and four cents. The first payable on the fifteenth of September next, and the rest monthly thereafter, respectively, which notes, when paid, with what said Fernald has previously paid, is to be regarded as full payment and satisfaction of our contract with Thomas Richardson, on which said Fernald is security, dated Oct. 2, 1866.

STEPHEN A. EMERY,
FREDERIC A. PRINCE.

Fernald made seven payments, aggregating $1,429.82 on these notes, the last being on March 17, 1869, but was unable to pay any more, and died utterly insolvent. No extension or modification of the terms of the original contract were ever made. At the time Fernald gave his notes of August 13, 1867, something was said about their being indorsed by Richardson, but plaintiffs' attorney said it would be difficult notifying him in New York, and that it was sufficient that he was bound by the original contract. All the business between the parties had been transacted through the same attorney, and it was under directions from the plaintiffs to look after their interests and their claim against Richardson (after Fernald's death), that he instituted this suit. When the writ was served the defendant went with the officer to that attorney's office to have his bond approved. While there he complained of having been arrested.

The counsel replied : " You have been in the city a week, and well knew I was expecting an adjustment of this contract, and that I have your letter promising to pay the contract sum and interest, on which there is a balance still due," or words to that effect. He rejoined, " I know that, and I don't repudiate any of my obligations, and if you had only addressed me a note it would have saved all this," or words to that effect. There was some other conversation, but nothing material to the issue.

The defendant testified that the notes so given by said Fernald were given and accepted by the plaintiffs without said Richardson's knowledge or consent, and he protested to said Fernald against his having given them, as soon as informed by Fernald of the fact, and that the plaintiffs, in person or by counsel, never called or demanded payment of the notes and, accordingly, he had never paid the same.

On the seventh of January, 1867, defendant wrote Emery & Prince requesting thirty days' extension on the contract, which was refused unless security satisfactory to George F. Emery was furnished, which was never done. The case was reported under an agreement that if, upon the foregoing facts, plaintiffs are entitled

to recover, the defendant is to be defaulted and judgment entered for said sum of $7,000, with interest, less the aforesaid payments; or, if not so entitled, plaintiffs are to become nonsuit.

*George F. Emery,* for plaintiffs.

This is a contract of sale or return. Not being returned Jan. 8, 1867, the sale became absolute. 1 Parsons on Contracts, 539; *Dearborn* v. *Turner,* 16 Maine, 17.

Fernald's notes did not discharge him from original contract. *Fowler* v. *Ludwig,* 34 Maine, 461; *Millidge* v. *Boston Iron Co.,* 5 Cush., 170. Certainly, then, it didn't discharge Richardson.

*Bradbury & Bradbury,* for defendant, argued that the new contract with Fernald was substituted for that of October 2, 1866, which was thereby discharged. It irrevocably fixed different times, terms, and amounts of payments, without defendant's consent; extending the time so as to prevent earlier collection. *Andrews* v. *Marrett,* 58 Maine, 539, and cases there cited.

*F. O. J. Smith,* also appeared for defendant.

DICKERSON, J. On the second day of October, A. D. 1866, the defendant, as principal, and James E. Fernald, as surety, in consideration that the plaintiffs had conveyed to the defendant the balance of their interest in a certain invention, entitled "A safety switch for preventing railroad cars and engines from running off their tracks," together with their interest in the letters patent issued therefor, and of the receipt of one dollar, jointly and severally promised and agreed with the plaintiffs to pay them the sum of seven thousand dollars, on or before the eighth day of January then next, or to reconvey and revest in the plaintiffs all the property and rights they had received from them by virtue of said conveyance.

On April 13, 1867, the surety paid the plaintiffs $1,000, and on the 13th day of the following August he gave them eleven notes of five hundred dollars each, and one of seven hundred and thirty-three dollars and four cents. The first note was payable Sept. 15, 1867, and the others monthly thereafter, respectively. It was

stipulated between the plaintiffs and the surety that "the notes, when paid, with what the surety had previously paid were to be regarded as full payment and satisfaction of the contract of Oct. 2, 1866."

Neither alternative of the contract of Oct. 2, 1866, has ever been complied with; and the only defense relied upon is the aforesaid arrangement entered into between the plaintiffs and the surety.

It is argued by the counsel for the defendant that that transaction constituted a new contract superseding the contract of Oct. 2, 1866, and discharging the defendant from all liability thereon. It appears that the defendant was not a party to that contract, and that he never assented to it. It was a contract exclusively between the surety of the contractor and the contractee. In the contemplation of the parties to it, the notes were not to be regarded as payment and satisfaction of the prior contract unless they were paid, a contingency that has never occurred. If, therefore, the taking of the notes operated in law as a discharge of the defendant from his liability on his contract, it has an effect contrary to the intention of the parties to it.

The case is clearly distinguishable from that class of cases where, for a valid consideration, the contractee agrees with the contractor without the knowledge or consent of the surety to extend the time of payment. In such cases, a new contract is made materially differing from the old one. The surety not being a party to the new contract cannot be held under it, nor is he liable under the old one, since that has been superseded by the new one; the right of action of the contractee against the surety is not simply suspended by the new arrangement, but it is lost. Besides, by the extension of the time of payment the surety might lose his claim against his principal for indemnity if he should pay the debt.

In the case at bar the surety undoubtedly made a new contract with the plaintiffs in respect to his liability on the prior contract. But this new contract, by its terms, only relieved him from that one conditionally; and if, as the counsel for the defendant contends,

the new contract suspended the plaintiff's remedy against the surety on the original contract, during the time fixed for the payment of the notes, the defendant has no cause of complaint; he was not damaged by this suspension; nor would he have been damaged if the surety had fulfilled his new contract with the plaintiffs. It was immaterial to the defendant whether he paid his debt to the plaintiffs or reimbursed his surety for paying it. And even if the new arrangement suspended the plaintiffs' right of action against the defendant for the time being, what cause of complaint would he have? How was he damaged? He might have paid his debt at any time, and if he had done so pending the provisional arrangement between the plaintiffs and his surety, the latter would have been relieved from his liability to pay the notes to the plaintiffs. But the contract with the surety did not suspend the plaintiffs' right of action against the defendant; that was another form of security given by the surety to which the defendant was a stranger, and by which he lost no rights, was not damaged, nor discharged from liability on the original contract.

According to the provisions of the report, the entry must be,

> *Judgment for plaintiffs, for the sum of seven thousand dollars and interest from Jan. 31, 1867, less the payments specified in the report, and the interest thereon from the time they are respectively made.*

APPLETON, C. J.; CUTTING, WALTON, and DANFORTH, JJ., concurred.